**ALLIANCE FOR the WILD ROCKIES, Plaintiff—Appellant,**

v.

**U.S. FOREST SERVICE; U.S. Fish & Wildlife Service, Defendants—Appellees.**

No. 08–35841.

United States Court of Appeals, Ninth Circuit.

Argued July 8, 2009.

Submitted Nov. 2, 2009.

---

\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Timothy M. Bechtold, Esquire, Bechtold Law Firm PLLC, Rebecca Kay Smith, Missoula, MT, for Plaintiff–Appellant.

Justin R. Pidot, U.S. Department of Justice, Washington, DC, for Defendants–Appellees.

Before: PREGERSON, RYMER and GRABER, Circuit Judges.

## MEMORANDUM *

The Alliance for the Wild Rockies appeals the summary judgment entered in favor of the United States Forest Service and United States Fish and Wildlife Service on its claims under the Endangered Species Act and the National Forest Management Act relating to the Northeast Yaak Project in Kootenai National Forest in Montana. We affirm.

The Alliance's contentions mainly center on what it calls the "2006 Rule Set." However, the "2006 Rule Set" was simply an internal document that is not final agency action. *See Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); *Stauffer Chem. Co. v. FDA,* 670 F.2d 106, 108 (9th Cir.1982). It is, therefore, irrelevant.

To the extent the appeal can be read to encompass the adequacy of consultation with respect to the 1987 Forest Plan as applied in 2007, we believe that the decisional documents for the Northeast Yaak Project—the 2007 ROD, the 2007 Supplemental Biological Assessment, and the Final Supplemental Environment Impact Statement—are sufficient to warrant deference. *See Kern County Farm Bureau v. Allen,* 450 F.3d 1072, 1080–81 (9th Cir. 2006); *Trout Unlimited v. Lohn,* 559 F.3d 946, 959 (9th Cir.2009) ("It is not our role to ask whether we would have given more or less weight to different evidence, were we the agency. Assessing a species' likelihood of extinction involves a great deal of predictive judgment. Such judgments are entitled to particularly deferential review."). The agencies are not obliged to adopt specific findings of any particular study; rather, "consideration" suffices. *Kern,* 450 F.3d at 1081. Here, both the 1997 Wakkinen Study and mortality data from 2000–2005 were "considered." As the Forest Service took note of the Wakki-

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

nen Study as well as new evidence of bear mortality, and its human causes—and the Alliance points to no data that was omitted from consideration—we cannot conclude that its final action was arbitrary and capricious. *See Lands Council v. McNair,* 537 F.3d 981, 993 (9th Cir.2008) (en banc).

Even if preserved, Alliance's suggestion on appeal that the agencies should have re-consulted on the 1987 Forest Plan and 1995 Incidental Take Statement in light of new information, *see* 50 C.F.R. § 402.16(b), fails given that the Forest Service reinitiated consultation with the Fish and Wildlife Service on March 23, 2007. The Fish and Wildlife Service then concurred in the Forest Service's finding of no adverse effect.

AFFIRMED.

PREGERSON, J., dissenting:

I dissent because I disagree with the majorities' review of Plaintiff–Appellant's best available science claim. We review the district court's grant of summary judgment on Plaintiff–Appellant's best available science claim de novo, with all facts read in the light most favorable to the non-moving party. *Covington v. Jefferson County,* 358 F.3d 626, 641 n. 22 (9th Cir. 2004). The Administrative Procedure Act governs our review of agency decisions under the Endangered Species Act and the National Forest Management Act. *Selkirk Conservation Alliance v. Forsgren,* 336 F.3d 944, 953 (9th Cir.2003). It mandates that agency decisions be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). "An agency's action is arbitrary and capricious if the agency fails to consider an important aspect of a problem, . . . ." *Lands Council v. Powell,* 395 F.3d 1019, 1026 (9th Cir. 2005).

Section 7 of the Endangered Species Act requires the Forest Service to consult with the Fish and Wildlife Service to ensure that the standards it incorporates in its Forest Plan are "not likely to jeopardize the continued existence of any . . . threatened species [such as the Cabinet–Yaak grizzly bear] or result in the destruction or adverse modification of such species. . . ." 16 U.S.C. § 1536(a)(2). Further, "[i]n fulfilling th[is] requirement," the two agencies "shall use the best scientific and commercial data available." *Id.* The procedural guidelines for complying with this requirement specify that "[r]einitiation of formal consultation is required . . . [i]f new information reveals effects of the action that may affect listed species . . . in a manner or to an extent not previously considered[.]" 50 C.F.R. § 402.16; *see Conner v. Burford,* 848 F.2d 1441, 1454 (9th Cir.1988) (agencies "cannot ignore available biological information").

Pursuant to section 7 of the Endangered Species Act, the Forest Service then is required to apply the standards developed in the Forest Plan to protect the Cabinet–Yaak grizzly bear to proposed projects such as the Northeast Yaak Project. 16 U.S.C. § 1536(a)(2). By applying these protective standards to proposed projects, the Forest Service "shall, in consultation with [the Fish and Wildlife Service], insure that [the proposed project] . . . "is not likely to jeopardize the continued existence of any . . . threatened species [such as the Cabinet–Yaak grizzly bear] or result in the destruction or adverse modification of such species. . . ." *Id.* In doing so, the two agencies again "shall use the best scientific and commercial data available." *Id.*

I disagree with my colleagues that the decisional documents for the Northeast Yaak Project reflect sufficient consideration of the best available science. On the contrary, the standards developed in the Forest Service's 1987 Forest Plan and Fish and Wildlife Service's 1995 Biological Opinion ("Forest Plan") did not account for

"the best scientific ... data available" as required under the Endangered Species Act Section 7 when they were applied to the Forest Service's Cabinet–Yaak project in 2007. *See id.* The Forest Plan did not account for "the best scientific ... data available" when applied in 2007, *id.*, because it neither accounted for the 1997 Wakkinen Study[1] nor up-to-date population trend data.

For this reason, the "Forest Service cannot go forward with th[e Cabinet–Yaak project] without first complying with the consultation requirements of the [Endangered Species Act]." *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1057 (9th Cir.1994). Accordingly, I dissent.

---

1. The 1997 Wakkinen Study is "the *only* habitat parameters study based on bears in the [Cabinet–Yaak Project] area." *Cabinet Res. Group v. U.S. Fish and Wildlife Serv.*, 465 F.Supp.2d 1067, 1089 (D.Mont.2006).

